**DAGGETT et al. v. W. B. WORSHAM & CO. et al. (No. 10613.)**

(Court of Civil Appeals of Texas. Fort Worth. April 12, 1924. Rehearing Denied May 17, 1924.)

**1. Husband and wife ☞274(4)—District court held to have jurisdiction of suit to subject land to community debt.**

District court held to have jurisdiction of a suit against heirs of a decedent to subject land of widow to debt of decedent as community property, where it was alleged that parties to suit were sole creditors and that administration was unnecessary, in view of Rev. St. art. 1705, and Const. art. 5, § 16.

**2. Husband and wife ☞274(4)—On issue of community property court erred in refusing to give special instruction for widow.**

In action against widow and others, as heirs, to subject land to debt of decedent, the evidence being insufficient to show land in controversy was community property, court erred in refusing to give special instruction in favor of widow.

**3. Husband and wife ☞262(2)—Burden of proof as to community property.**

While production of deed from third party to wife raised presumption that land became community property, yet, when this presumption was overcome by proof that at time of making of that deed it had been so made by express direction of husband, it devolved upon creditors claiming land was community property to offer further proof sufficient to meet burden resting upon them under allegations of community character of property.

**4. Husband and wife ☞262(1)—Presumption of community property one of fact.**

Presumption of community property, as declared by statute, is but a presumption of law, and not of fact.

**5. Husband and wife ☞262(1)—Husband's direction of conveyance to wife raises presumption of separate estate in her.**

That husband caused conveyance to be taken in his wife's name raises presumption of intention that the property should be her separate property.

**6. Fraudulent conveyances ☞210—Subsequent creditors with notice cannot claim deed fraudulent.**

Subsequent creditors of husband, having full notice of deed of land from third person to wife, are in no position to claim deed was fraudulent.

**7. Evidence ☞594—Jury cannot arbitrarily disregard evidence of unimpeached witness.**

Where there is no conflict in evidence, jury have no right to arbitrarily disregard evidence of unimpeached witness against whom there is no discrediting fact or circumstance, nor is jury authorized to deny proper weight to undisputed facts with no suspicion cast thereon.

Appeal from District Court, Clay County; H. R. Wilson, Judge.

Action by W. B. Worsham & Co. and others against Mary H. Daggett and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

W. G. Eustis, of Henrietta, for appellants. Wantland & Dickey, of Henrietta, and Bullington, Boone & Humphrey and John B. King, all of Wichita Falls, for appellees.

CONNER, C. J. This suit was instituted on May 31, 1922, in the district court of Clay county by W. B. Worsham & Co., bankers, an unincorporated banking concern doing business in the city of Henrietta, Clay county, and composed of Carl M. Worsham and Leola P. Hapgood, against Elliott Daggett, Mrs. Mary H. Daggett, and Dorothy Daggett.

The plaintiffs declared upon a promissory note dated April 17, 1920, executed by Elliott Daggett and George H. Daggett for the sum of $5,209.65. At the same time the plaintiffs caused the issuance and levy of a writ of attachment upon certain lots and blocks in the town of Henrietta. It was alleged that George H. Daggett had departed this life and left surviving him the defendants in the cause, who, it was alleged, were liable for

the debts of said George H. Daggett as his heirs.

The defendants Elliott Daggett and Dorothy Daggett were cited by publication. The original answer of Mary H. Daggett is not included in the record, but it appears that a demurrer of defendant Mary H. Daggett to the plaintiffs' petition was heard and sustained and plaintiffs given leave to file an amended petition and the cause set for October 2, 1922. Thereafter, to wit, on November 1, 1922, the plaintiffs filed their first amended original petition, upon which, together with the answers of defendants to be hereinafter noted, the trial proceeded. Complaint therein was made against the defendants named in their original petition and also against J. H. Shelton, as temporary administrator of the estate of George H. Daggett, who it appears had been appointed administrator between the date of filing of plaintiffs' original petition and the date of filing the amended petition, and also against the Farmers' National Bank of Stephenville, Erath county, Tex., a banking corporation, and Will Clay, a resident of said Stephenville. It was alleged that the plaintiffs and said Will Clay and the Farmers' National Bank of Stephenville were the sole and only creditors of the estate of George H. Daggett, deceased, and that the Farmers' National Bank and Will Clay were made defendants for the reason that they had declined the request of plaintiffs to join in the suit in the prosecution of the action.

The plaintiffs further alleged the execution of the promissory note as in their original petition; that George H. Daggett had departed this life on October 30, 1921, at Wayzata, Hennepin county, Minn., intestate, leaving surviving him, as his sole heirs at law, the defendant Mrs. Mary H. Daggett, his widow, Elliott Daggett, his son, and Dorothy Daggett, his daughter; that at the time of the death of said George H. Daggett "he was seized and possessed of certain community property in common with his wife, Mrs. Mary H. Daggett, defendant herein, said property being situated in Henrietta, Clay county, Texas, and described as follows, to wit." A description of the lots and blocks in controversy and upon which the writ of attachment had been levied then follows.

It was further alleged that said property is liable for the debts of said George H. Daggett and that his heirs took the property subject to the community debts of George H. and Mary Daggett; that the property described was the sole and only property owned by George H. Daggett in Texas; that no administration had ever been had upon the estate of said George H. Daggett in Texas except in Clay county; that the only creditors of the said George H. Daggett are the plaintiffs and defendant Will Clay and the Farmers' National Bank of Stephenville, the exact nature of whose claims were not known, but who had been made defendants for the adjudication of all matters in controversy.

The plaintiffs accordingly prayed that they might have judgment against Mary H. Daggett, Elliott and Dorothy Daggett, and against J. H. Shelton, temporary administrator of the estate of George H. Daggett, for their said debt, and that the respective claims of defendants Will Clay and the Farmers' National Bank of Stephenville be ascertained and adjudicated with respect to the community property of George H. and Mary H. Daggett, and that the attachment theretofore sued out be sustained and for general relief, etc.

On October 24, 1922, the court appointed P. M. Stine to represent the nonresident defendants Elliott and Dorothy Daggett, who had been cited by publication, and for these parties Judge Stine, on October 27th, filed a general demurrer and a general denial. Like pleas were filed by J. H. Shelton, the temporary administrator on November 1, 1922. Will Clay, on November 2d, appeared and answered to the effect that on September 6, 1922, he had obtained a judgment in rem against Elliott Daggett and George H. Daggett for the principal sum of $675, with a decree of the court foreclosing an attachment lien upon the property described in plaintiffs' amended original petition; that said judgment was still valid and subsisting and operated as a lien on the property so described; that such lien was first and prior to any claim of plaintiffs or of the codefendants, and he prayed that it might be so adjudged and the administrator directed to first pay his said debt.

On the same day, the Farmers' National Bank of Stephenville answered to the effect that on August 4, 1920, George H. Daggett and Mary Daggett had executed to it their promissory note for the sum of $650, due on or before February 1, 1921, with interest, etc., and that, having failed to pay the same, the bank on July 1, 1921, had filed suit on the note in Erath county, Tex., and at the same time had also sued out and had issued in proper form a writ of attachment which had been levied on a part of the property in controversy, which was described in the bank's answer; that judgment in its favor for the amount of its debt and the foreclosure of said attachment lien had been duly entered and that said judgment was in full force and effect and unpaid, and there was now due thereon the sum of $790; that the writ of attachment referred to had been filed in the attachment record of the county clerk of Clay county on July 13, 1921, and duly recorded; that thereby this defendant had secured a valid lien on the premises described and the plaintiffs had both actual and constructive notice of such lien, which it

was alleged was prior to the claims of other parties to the suit, and the prayer was that it might be so adjudged and the temporary administrator directed to first make payment out of the property in his hands.

Mary H. Daggett appeared and answered by a third amended answer, filed on October 27, 1922, the previous answers filed by her not appearing in the record. She answered by a general demurrer and a general denial, and, further, specially to the effect that if the plaintiffs' debt had ever been incurred, which was denied that it has long since been paid off and discharged by George H. Daggett; that said debt was paid some time during the year 1921. She further specially pleaded in trespass to try title, alleging that she was lawfully seized and possessed of the tracts of land in controversy and that she had been ejected therefrom by the plaintiffs and Sylvan Schlosberg, who had been interpleaded, for which she sought recovery and the reasonable rental value thereof since the first day of January, 1922. The defendant Schlosberg filed a general denial to the defendant Mary H. Daggett's third amended answer.

Other pleadings, consisting of supplemental petitions and answers, were filed which it is not necessary to notice, for we think the foregoing brief statement of the pleadings of the parties will show the issues involved.

The case was submitted to a jury on special issues on December 11, 1922, that being a day of the regular October term of court. The judgment recites the appearance of all parties. The jury in answer to special issues found to the effect that the property described in the plaintiffs' petition, and upon which the plaintiffs' attachment lien had been levied, was not the separate property of Mary H. Daggett, but was the community property of George H. Daggett and Mary H. Daggett; that George H. Daggett at the time of his death, on October 30, 1921, was indebted to the plaintiffs, W. B. Worsham & Co., bankers, the Farmers' National Bank, and Will Clay of Stephenville, Tex., and that the note sued on had not been settled or discharged.

As will more fully appear from our discussion hereinafter set out, Mary H. Daggett claimed the property in controversy as her separate property, under a deed from Wm. H. Featherstone and wife to her, executed on April 9, 1915, the consideration passing to Featherstone for such conveyance being certain property situated in Kern county, Cal., alleged to belong to the separate estate of Mary H. Daggett. The special issues, together with the answers of the jury thereto relating to this phase of the case are as follows:

"Special issue No. 6: At the time the deed from Wm. H. Featherstone and wife to Mary H. Daggett was made, on April 9, 1915, did Geo. H. Daggett intend that the property therein conveyed should become the separate property of the said Mary H. Daggett? Ans. No.

"Special issue No. 7: What constituted the consideration given to W. H. Featherstone for the property in Clay county, a part of which is in controversy in this action? Ans. An exchange of property in Kern county, Cal., for property in Texas.

"Special issue No. 8: If your answer to the foregoing is that it was the property in Kern county, Cal., then state whether such California property was the separate property of Mary H. Daggett, or the community property of Geo. H. Daggett and Mary H. Daggett at the time the deed to Featherstone was made. Answer as you find the facts. Ans. Community property."

The court further found that the defendants Elliott and Dorothy Daggett were nonresidents; that they had been duly cited by publication; and that the court had acquired jurisdiction over them by reason of plaintiffs' attachment, which had been rightfully sued out.

Upon the findings of the jury and the court, as stated, the court rendered a judgment in favor of the plaintiffs, W. B. Worsham & Co., for the sum of $3,746.87, and directed that the judgment be certified to the county court of Clay county in the administration of the estate of George H. Daggett, deceased, for further acts and proceedings consistent with the findings of the jury, the judgment of the court, and the laws of the state of Texas.

The judgment further recites that the property of George H. and Mary H. Daggett was community property and subject to the community debts of George H. Daggett and to the payment of plaintiffs' judgment, and, further, that the plaintiffs and Will Clay and the Farmers' National Bank of Stephenville are the sole and only creditors of the estate of George H. Daggett, and that said claims, and each of them, remain unsatisfied and are valid, subsisting, and outstanding claims against the estate of George H. Daggett, deceased; and it was found and adjudged that defendants Mary H. Daggett, Dorothy Daggett, and Elliott Daggett were not entitled to recover anything upon their cross-action against the plaintiffs, W. B. Worsham & Co., bankers, nor against defendant Sylvan Schlosberg, taxing all costs of the action against Mary H., Dorothy, and Elliott Daggett, and J. H. Shelton, the administrator. From such judgment the defendants Mary H. Daggett and Dorothy Daggett, by her guardian ad litem, have duly prosecuted this appeal.

Neither J. H. Shelton, the administrator, nor Will Clay nor the Farmers' National Bank of Stephenville, have appealed, nor have they filed cross-assignments of error.

Appellants present numerous assignments of error and propositions, but counsel for appellees, W. B. Worsham & Co., bankers, in its behalf thus present the questions for our determination:

"There are two main points upon which this appeal is predicated, and our argument will deal only with these two questions. All of the other questions presented by the appellants are, in our judgment, ancillary and incident to these two paramount propositions.

"The first of these propositions is, that the plaintiff's petition failed to show that the district court of Clay county, Tex., had jurisdiction of the matters in controversy, but affirmatively showed that the said district court did not have jurisdiction. In other words, the appellants assert that this action was, in effect, brought to establish a claim against the estate of Geo. H. Daggett, deceased, and did not involve the question of title to the lands standing in the name of Mary H. Daggett.

"The next question involved is, that the verdict of the jury, finding that the land in question was the community property of Mary H. Daggett and Geo. H. Daggett, deceased, was against the uncorroborated [undisputed] testimony; that is, that there was no evidence to support the finding of the jury that such property was not the separate property of Mary H. Daggett.

"If these two questions are decided adversely to the appellants, then this case should be affirmed, and we will, in presenting our argument, deal separately with each of these questions and take them up in the order above named."

[1] While appellants present numerous propositions upon which a reversal of the judgment is requested, we concur in the statement made by appellees as above set forth, and we also agree with appellees in their contention that the district court, as the issues were finally presented to it, did have jurisdiction to determine the questions involved. It may be true, and was true, that as originally instituted the plaintiffs failed to show that the court had jurisdiction because of a want of allegations to the effect that the plaintiffs were the only creditors of the estate of George H. Daggett, deceased, and that there was no necessity for administration upon his estate, but the court sustained demurrers to the petition for the want of such allegations and the plaintiffs were permitted to amend, whereupon by amendment, a temporary administrator in the meantime having been appointed, it was alleged that the plaintiffs and Will Clay and the Farmers' National Bank of Stephenville were the sole creditors, and between these parties priority of liens were asserted. In addition to which, Mary H. Daggett presented the issue of title in her own right to the lands described in the plaintiffs' petition, upon which attachment liens were asserted. As to the issues so involved, we think it clear that the county court would have been without power to conclude the issues by an adjudication. See Rev. Statutes, art. 1705; section 16, art. 5, State Constitution; Arnold v. Hodge, 20 Tex. Civ. App. 211, 49 S. W. 716; Milam v. Hill, 29 Tex. Civ. App. 573, 69 S. W. 447; Simpkins on Estates of Decedents, pp. 18 to 23, inclusive.

[2] Upon the second question, however, we agree with the contentions of appellants and have concluded not only that the evidence wholly fails to support the findings of the jury upon the issues that the land in controversy was the community property of George H. and Mary H. Daggett, but also that the court erred in refusing to give the requested special instruction for the jury to find in favor of Mary H. Daggett.

Mary H. Daggett testified, without contradiction that with the proceeds of the sale of her homestead in the state of Minnesota she purchased land in the state of Oregon; that she sold the Oregon land and with the money received from it bought 640 acres of land in Kern county, Cal., in the year 1914. The deed to the California land was made to her. It did not recite that it was her separate property, but it was further shown by a certified copy, duly authenticated, of section 164, Civil Code of the state of California, that whenever in that state property is conveyed to a married woman by an instrument in writing the "presumption is that the title is thereby vested in her as her separate property." The deed to Mary H. Daggett to this California land was by Mellie P. and F. G. Mathison, dated October 10, 1914, and recorded in Kern county, Cal., reciting the consideration of $1 and other valuable consideration. It further appears without dispute that George H. Daggett, acting as an attorney in fact, under a power of attorney for Mary H. Daggett, on the 20th day of March, 1915, contracted with Wm. H. Featherstone, of Henrietta, Tex., for an exchange of the California lands for the lands in controversy in Henrietta, Tex., and that on April 9, 1915, Wm. H. Featherstone and wife conveyed to Mary H. Daggett, "of the county of Los Angeles and state of California," the property in controversy, reciting a consideration of $10,000.

H. C. Yates testified without dispute that he resided in Bakersfield, Cal., and was an attorney for an abstract company, which, at times as stated in his evidence, gave certificates of the condition of the title to the property in Kern county, first to Mary H. Daggett and later to Wm. H. Featherstone; that on April 2, 1915, when his company gave the first certificate, the title to the property stood of record in Kern county in Mary H. Daggett, "presumably as her separate property"; that when the second or continuation certificate was made, April 23, 1915, the record title to the property in Kern county records "stood in Wm. H. Featherstone." This

witness further testified that he was an attorney at law, admitted to practice in the state of California, and that he was familiar with the rules of that state; that the law governing the ownership of real property in California by married women and the presumption of ownership of property so conveyed is governed by section 164 of the Civil Code of the state of California, a copy of which, duly authenticated by the secretary of the state of California, was annexed to and made a part of his deposition.

Irv. H. Mulholland testified, in substance, that he resided in Los Angeles, Cal., and was engaged in the real estate business as a broker; that he acted as a broker for Mary H. Daggett and Wm. H. Featherstone in the exchange of lands by them. The deed to Mary H. Daggett, which conveyed the property in controversy in the town of Henrietta, Tex., was dated April 9, 1915, and recited a consideration of $10,000; that he had been employed to so act by George H. Daggett, who had power of attorney to act for Mary H. Daggett; that George H. Daggett at that time did not claim to own the California land; that he stated to the witness at the time that the section of California land was owned by Mary H. Daggett and directed that the deed from Wm. H. Featherstone to the Texas land be made to her, giving as his reason therefor, that the Kern county land was the property of Mary H. Daggett, and that the land had been acquired by the proceeds from other land owned by her. He further testified that George H. Daggett and Mary H. Daggett were both present when the deed was made to her, and it was so made at her request.

It further appears that George H. Daggett and his wife conveyed the property in controversy to Dorothy Daggett by deed dated October 28, 1916, and recorded December 2, 1916, and that later, to wit, on December 21, 1916, Dorothy Daggett reconveyed the property to Mary H. Daggett. This reconveyance recites a consideration of $1. Mary H. Daggett in explanation of the deed of Dorothy Daggett testified to the effect that at the time of the execution of the deed to Dorothy she (Mary H. Daggett) was in ill health and about to be taken to Rochester, Minn., for an operation, and that with the land so conveyed to her, in event of a serious result from the operation, Dorothy was to be secured in the sum of $10,000, which Dorothy had theretofore advanced to her father and mother, and also that Dorothy was to look after her father. In the interest of accuracy, we will here quote Mary H. Daggett's testimony:

"I don't remember just what we owed her at the time I made that deed to her. We had borrowed some stock from her and were paying her back. It was between $5,000 and $10,000. When her father was in business and doing well, he provided for both his children. When

he gave me he gave them and invested for them, and when he had to give up his business we gave all the proceeds we could and she gave all she had and made no demands, and when I was about to be operated on I felt she should be reimbursed and her father taken care of, and so I made that deed. In 1917 Mr. Daggett had a stroke and was a very sick man from then on. There was no intent to defraud. The property was always mine. Mr. Daggett was always able to take care of us."

In addition to what we have stated, Mary H. Daggett testified in her own behalf to the effect that at the time of the several conveyances to her George H. Daggett was not indebted to any one so far as she knew, and that the property in controversy was her separate property, and appellants in their brief say that "there is no testimony whatever to the contrary."

[3, 4] Appellees in argument suggest that the conveyances to Mary H. Daggett were for the purpose of defrauding the creditors of Geo. H. Daggett, but no evidence is pointed out which shows, or tends to show, that, at the time of these conveyances to Mary H. Daggett, Geo. H. Daggett was indebted or insolvent, and the only circumstance pointed out as a badge of fraud is the fact that the deed from Dorothy Daggett to Mary H. Daggett, dated December 21, 1916, was not recorded until November 17, 1919. As explanatory of this circumstance, however, Mary H. Daggett testified without contradiction that at the time of making the deed to her she was a nonresident and had without design overlooked having it forwarded to Texas for registration. It is to be observed that all of these conveyances to Mary H. Daggett antedated the making of the debts upon which the plaintiffs Will Clay and the bank at Stephenville declared. Appellees also rely upon the presumption of community property as declared by our statutes, but this is but a presumption of law and not of fact, and while the production of the deed from Featherstone to Mary H. Daggett, under the terms of our law, raised the presumption of its being community property, yet when this presumption was overcome by proof that at the time of the making of that deed it had been so made by the express direction of her husband, it devolved upon the plaintiffs to offer further proof sufficient to meet the burden resting upon them under their allegations of the community character of the property.

[5] The plaintiffs expressly alleged that the property was the community property of George H. and Mary H. Daggett. Without such an allegation they showed no cause of action against the defendant Daggetts as neither Mary Daggett nor Dorothy Daggett was a party to the debt of plaintiffs, and, while Elliott Daggett was alleged to so be, yet there was no personal service upon him, and he was a nonresident and as such the

court was without jurisdiction over him. In the absence of proof of plaintiffs' allegations to the effect that the property was community property of George H. and Mary H Daggett, and that the plaintiffs had secured jurisdiction over the property by the levy of the attachment, they were without right of recovery. The burden of proof was therefore clearly upon the plaintiffs to establish the community character of the property in controversy, and when, as stated, the presumption of the statute was overcome by the proof of separate title in Mary H. Daggett, the burden rested upon the plaintiffs to overcome by evidence such rebutting proof, and, having failed to do so, the defendants were entitled to the peremptory instruction in their favor, as requested. The rule that the burden of proof is on him who asserts the separate character of the property does not apply where defendant denies the allegation of plaintiff who asserts the community character of the property, and has the burden of proving its community character. Emery v. Barfield (Tex. Civ. App.) 156 S. W. 311, writ refused. In the same case it was held that a conveyance by a husband to his wife vests the separate estate in her as between the parties and their heirs, and this is true whether the conveyance so limits the estate or not, and that proof that a husband caused a conveyance to be taken in his wife's name tends to show that it was the intention of the parties that the property should be her separate property. See, also, Armstrong v. Tuberville (Tex. Civ. App.) 216 S. W. 1101.

As before stated, the only circumstance pointed out by appellees in their brief is the conveyance from Dorothy Daggett back to her mother, but the explanatory evidence relating thereto evidently shows that the conveyance to Dorothy Daggett in the first instance was in the nature of a gift and as security for possible loss in the event of her mother's death. Upon the recovery of the mother she retransferred upon a mere nominal consideration, and the proof is that she never thereafter asserted any claim to the property, thus affording a presumption that the loan to secure which the deed to Dorothy Daggett had been made had been otherwise satisfied.

[6] We should perhaps note a further circumstance that seems not to have been relied upon. In November, 1921, after the execution of the note in controversy, George H. Daggett by deed expressly renounced or conveyed all title to the property in controversy to his wife, Mary H. Daggett; but, as a circumstance tending to show fraudulent purpose on the part of George H. Daggett and Mary H. Daggett to defraud their creditors at the time Wm. H. Featherstone's deed was made to Mary H. Daggett, it amounts to nothing as against the plaintiffs, and as against the defendants Will Clay and the Farmers' National Bank of Stephenville,

the debts of these several parties having been incurred by George H. Daggett a number of years later, it undoubtedly being the law of this state that as such subsequent creditors said parties, having full notice as they did of the deed from Featherstone to Mary H. Daggett, are in no position to claim that the Featherstone deed was fraudulent. See Quarles v. Hardin (Tex. Com. App.) 249 S. W. 459, and authorities therein quoted.

[7] In opposition to appellants' assertion of error in the action of the court in refusing the peremptory instruction, it has been suggested that the jury were the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony, and that hence they had the right to reject the testimony of Mary H. Daggett. It is to be observed, however, that the testimony of Mary H. Daggett was corroborated in a number of particulars, and, while in cases of a conflict of evidence the rule invoked in the suggestion is undoubtedly to be observed, yet where there is no conflict our Supreme Court has held that the jury have no right to arbitrarily disregard the evidence of an unimpeached witness against whom there is no discrediting fact or circumstance, nor is the jury authorized to deny proper weight to undisputed facts with no suspicion cast thereon. Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788; Dallas Hotel v. Newberg, by the Dallas Court of Civil Appeals, 246 S. W. 755; Hill v. Staats (Tex. Civ. App.) 187 S. W. 1039. In the case last cited, which was by this court, it was held that although the entire testimony as to the instructions given a chauffeur, upon whose wrongful act the action was based, came from the defendant and his wife, yet the jury were not authorized to disregard their uncontradicted testimony, where no discrediting circumstances appeared. In the case by the Dallas Court of Civil Appeals it was held, where the only evidence on the contested issue of fact in the case was the testimony of plaintiff, and this was free from suspicion, inconsistency, or improbability, that it was proper to direct a verdict for him, notwithstanding his interest in the case.

We accordingly conclude, as before indicated, that the court erred in refusing to give the peremptory instruction as requested, and that the judgment below should be reversed and here rendered for Mary H. Daggett against the plaintiffs, Carl M. Worsham, Leola P. Hapgood, joined pro forma by her husband, K. N. Hapgood, and composing the unincorporated banking concern of W. B. Worsham & Co., and Will Clay and the Farmers' National Bank of Stephenville, and Sylvan Schlosberg for the lands and lots described in plaintiffs' petition and in the judgment herein.

We further find that Sylvan Schlosberg, from whom Mary H. Daggett claims rentals

in a cross-action, has been leasing and collecting the rents on the buildings situated on lots 13 and 14, and ten feet off of the south side of lot 15 in block 17, described in the judgment, and in the cross-action hereinabove adjudged to Mary H. Daggett, and that the amounts so collected by him and unpaid and that of right belong to Mary H. Daggett, aggregates, as confessed by him on the trial, $287.50. It is accordingly further ordered that the judgment below in his favor be also here reversed and here rendered for Mary H. Daggett, not only for the title and possession of appellant Mary H. Daggett's one-half interest in lots 13 and 14 and ten feet off the south side of lot 15 in block 17 of the town of Henrietta, Tex., known as the Nolan building or S. & F. buildings, but also for the said sum of $287.50, for which she may have her execution. It is further ordered that the appellants Mary H. Daggett and Dorothy Daggett recover all costs incurred by them herein, both in this court and in the court below, and that execution and all other process necessary to the enforcement of this judgment shall issue, and that this decision be certified below for observance and for such other proceedings, if any, not inconsistent herewith, as may be proper and necessary.

It is further ordered, however, that this judgment shall not be construed as inhibiting or prohibiting said W. B. Worsham & Co., and its individual members, Carl Worsham and Leola Hapgood, or the said Will Clay and the said Farmers' National Bank of Stephenville from prosecuting their claims against the administrator of the estate of George H. Daggett, and to that end to take such action in the county court of Clay county, where such administration appears from the record to be now pending, as may be lawful and proper, in no event, however, to be inconsistent with the provisions of this judgment.