Sallie M. McCreary et al. v. John A. Robinson.

No. 948. Decided December 9, 1900.

**1.  Will—Trust for Support—Right of Beneficiary to Allowance in Money.**
Whether the devise of an estate in trust charged with the support of another entitles him to an allowance in money for that purpose, depends on the intention of the testator, to be discovered by a consideration of the value of the estate charged. the previous relations between testator and beneficiary, and all circumstances in relation to the estate and parties existing at the time of the making of the will and of the death of testator.  Authorities on subject reviewed. (Pp. 227-231.)

**2.  Same.**
See facts under which, in a suit by a beneficiary to recover an allowance under the terms of his brother's will bequeathing land to the daughter of the beneficiary charged with the duty of maintaining him with the comforts and necessaries of life out of the rents and profits, a demurrer was improperly sustained to an answer alleging tender of and willingness to support, in the home of the trustee or elsewhere, but alleging intemperate habits and evil associates of the beneficiary as a reason for refusing payment of a money allowance. (Pp. 224-227.)

**3.  Same.**
The beneficiary in a trust for his support is not bound to accept such support in the family of the trustee unless such clearly appears, the testator's intention; but a testator who, after in life supporting another, has devised property charged with his maintenance, will be presumed to have intended support from the trust in like manner to that previously maintained, and not by an annuity. (P. 231.)

**4.  Trust Estate—Evidence—Superintendence of Property.**
In order to arrive at the net profits of a trust estate to determine the rights of beneficiaries to be supported therefrom, evidence of the value of the services of a superintendent of the estate is admissible. (P. 231.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Falls County.

John A. Robinson sued Sallie M. McCreary and others, her children, and recovered judgment. Defendants appealed, and upon affirmance obtained writ of error.

*Martin & Eddins,* for plaintiffs in error.—All the provisions of the will when taken together, and the will considered as a whole, manifest the intention of the testator to vest the defendant Sallie McCreary with the title to the rents, issues, and profits, and to charge her with

the duty and responsibility of disbursing the same as in her discretion might seem best for the support and maintenance of herself, her children, and her father, the plaintiff. The testator did not intend that any money should be paid to the plaintiff (except the $100 by the executrix), nor that he should have a legal right to any particular amount of money per month or per year. Herring v. Patten, 44 S. W. Rep., 52; same case, 29 S. W. Rep., 388; 23 Am. and Eng. Enc. of Law, 5, 9; 2 Perry on Trusts, secs. 508, 620, 624; Croswell on Executors, sec. 497.

Neither the will of Austin Robinson, which is made a part of plaintiff's pleading, nor the charge of the court, nor the verdict of the jury, nor all together, warrant the judgment of the court in making the sum found in favor of plaintiff a lien, and much less a first lien upon the rents, issues, and profits from the lands devised in the hands of the defendants. 22 Texas, 349; 22 Texas, 651; 1 W. & W. C. C., sec. 1285.

It appearing from the testimony that the trustee defendant, Mrs. McCreary, was at the time of the trial a widow, advanced in years, and an invalid, it was impossible for her to manage in person the lands devised. The wages of a competent man were therefore a necessary expense to be considered by the jury in determining the net revenues from said land, and consequently, the share or the amount to be paid plaintiff. 2 Perry on Trusts, sec. 910.

Said judgment is erroneous in ordering execution to issue from time to time in favor of the plaintiff against the defendant Sallie McCreary during her life and that of the plaintiff for the collection of $50 per month, said execution to issue each month in the future on the application of plaintiff; and in ordering that after the death of said Sallie McCreary, execution issue from time to time against the other defendants herein jointly and severally for the collection of said $50 per month; because said judgment is prospective in its character, and denies to these defendants their day in court. Salyers v. Smith, 55 S. W. Rep., 936.

*Rice & Bartlett* and *Z. I. Harlan,* for defendant in error.—For a counter-proposition and reply to the assignments of error, we adopt the language of the opinion of the former appeal, as follows: "We can not agree with the appellants as to their construction of the will in question. It creates in favor of the appellee an interest in the rents and profits arising from the lands which the testimony shows are in the possession of the appellants, and from which they have been receiving the rents and profits. From this source was to come his maintenance and support, and the court below had the power, after hearing the evidence bearing on the question, to determine what would be a reasonable sum for that purpose. The plaintiff was not required to accept the proffer of the defendants offering him a home with them. The will did not require that he should live with the defendants" (neither does it require that he shall board at a boarding house in Marlin, or live in a

house to be built by appellants for him on one of the farms devised, the two additional ways proposed for discharging this trust), "but created in his favor an express trust out of the revenues and profits of the estate for his support and maintenance. The defendants, as a means of satisfying this trust, could not force the plaintiff, against his wishes, to live with them" (nor can they force him, against his wishes, to board at a boarding-house, or live in a house they may erect for him on one of their farms). "He had the right to such an interest in the rents and profits of the estate as might be reasonably necessary for his support, and he could not be required to accept something else in lieu of it." McCreary v. Robinson, 49 S. W. Rep., 933; McCreary v. Robinson, 50 S. W. Rep., 477; Block v. Mauck, 52 S. W. Rep., 689; Fraser v. Hayes, 46 S. W. Rep., 475.

It was the evident intent of the testator in his will that a maintenance and support of appellee with all the necessaries and comforts of life should be the primary item to be a charge against and paid out of the fund created by that will, and in view of the fact that all of the evidence as to the income from the trust estate was confined to net rents and profits, and that the evidence showed such net rents and profits to be a sum far in excess of the total amount allowed to appellee by the judgment, the amount necessary for the support of the other beneficiaries, and the sum proposed to be paid to a manager of the farm, assuming that the trustee had the authority under the will to expend the trust fund in that way (a proposition we very seriously question), the error, if any, in excluding the proposed testimony was harmless, and is not cause for reversal. Fitzwilliams v. Davie, 43 S. W. Rep., 813; McCreary v. Robinson, 49 S. W. Rep., 933; Block v. Mauck, 52 S. W. Rep., 689.

Since no complaint was made in motion for new trial and none is made in the assignment of errors against the amount allowed to appellee by the judgment, and since the excluded testimony affected only the amount of the recovery, the error in excluding the proposed testimony, if error at all, is harmless. Railway v. Telegraph Co., 45 S. W. Rep., 182; Classen v. Elmendorf, 47 S. W. Rep., 1024; Telegraph Co. v. Clark, 25 S. W. Rep., 991; Chestnutt v. Chism, 48 S. W. Rep., 554; Payton v. Love, 49 S. W. Rep., 1109.

In ascertaining the intention of a testator, and applying the meaning intended to be applied by him to words used in his will, it is always competent, and often very instructive, to look to the surroundings of the parties to the will. Hunt v. White, 24 Texas, 643. Looking to the surroundings of the parties to this will, we find that the relations between this defendant in error and his brother, the testator, were marked for brotherly affection, the defendant in error so testifying; and testifying further, that if they had ever had a cross word in their lives he did not recall it; that the defendant in error is 73 years of age, and that on account of ill health he had not been able to do manual labor at any time during the past twenty-five or thirty years; that he

had no means of support of his own; that he had never lived with his daughter, nor had she ever contributed a cent to his maintenance or support, but that during all that time he had lived in a house provided for him by the testator, and that his brother, the testator, had maintained and supported him. We further find that in maintaining and supporting him the testator had always permitted defendant in error to purchase his own supplies and necessaries, to purchase from whomsoever he pleased, and when and where he pleased, and that the testator always paid his bills for him. Having always thus provided for and maintained and supported his brother, and knowing that there was a term of probate court in Falls County every two months and that there could not be much delay in probating his will, when he came to make his will he provided for the payment to his brother of $100 in cash by his wife, and provided for his further maintenance and support out of the rents from these devised lands, intending, no doubt, that his brother should continue to live where he chose, as he had always done before, and purchase his necessaries and supplies as he had always done when he provided for his support during his lifetime, and that his brother should live as he was living during his lifetime, and his bills be paid out of the trust estate he was creating for him by his will.

We are not without authority to support our contention that we are entitled to the relief sought in this suit, but so far as our research has gone all the authorities support us, leading among which are the four opinions in this very case: Colton v. Colton, 127 U. S., 300; Block v. Mauck, 52 S. W. Rep., 689; Fraser v. Hayes, 46 S. W. Rep., 475; Loomis v. Loomis, 35 Barb., 628; and Tolley v. Greene, 2 Sandf. Ch., 91.

GAINES, CHIEF JUSTICE.—On the 7th day of August, 1897, Austin Robinson died, having made his will, which was admitted to probate during the same year. The wife of the testator was nominated executrix and qualified as such.

The will, among others, contained the following provisions: .

"Item first: I will and bequeath to my niece, Sallie McCreary, wife of Joe McCreary, my plantation on the east side of the Brazos River in Falls County on the old river, known as my compromise place, the same being a tract of about four hundred acres of land allotted to me in a partition with James S. Jones of a tract we bought from Mrs. Huckens, and all my lands on the west side of the Brazos River in Falls County, Texas, consisting of two tracts of land that I inherited from the Jones estate, and containing four hundred acres and one six hundred and forty acres. These three tracts my executrix is to deliver to said Sallie McCreary at my death. I also bequeath to said Sallie McCreary five hundred acres of land on the east bank of the Brazos River off of the end of the Edly Montgomery fourth of a league, the east line of said five hundred acre tract to run across said Montgomery from the north to the south line and at right angles with them, provided, however, I only bequeath the remainder after fully satisfying

the life estate in said five hundred acre tract hereinafter bequeathed to my wife. These lands are to be held in trust by the said Sallie Mc-Creary for the following uses and purposes:

"1. She is to have the possession, use and enjoyment, the rents, issues and profits of said first described three tracts after my death, and of said five hundred acre tract after the death of my wife for the support and maintenance of herself, her children and my brother, John A. Robinson (her father) during her life.

"2. The said Sallie McCreary shall during the life of her said father, out of the rents and profits of said land, maintain him, said John A. Robinson, with the comforts and necessaries of life.

"3. At the death of said Sallie McCreary, said three tracts first described, and if my wife shall then be dead, said five hundred acre tract also, shall pass to such of the children of said Sallie McCreary as are then living, whether born before or after my death, share and share alike.

"Item second: Should Sallie McCreary die before my wife, Sallie Robinson, then, at the death of my said wife, I will and bequeath said five hundred acre tract to the children of the said Sallie McCreary, whether born before or after my death, to share and share alike.

"Item third: The said Sallie McCreary shall not in anywise dispose of, encumber, sell or convey said lands aforesaid, or any part thereof, for any purpose whatever.

"Item fourth: I give and bequeath to my brother, John A. Robinson, one hundred dollars, to be paid to him by my executrix within a year after my death.

*       *       *       *       *       *       *       *       *

"Item ten: Should Sallie McCreary die before John A. Robinson, her father, then his maintenance shall be a charge on the rents of the property in the hands of and bequeathed to the children of said Sallie McCreary. Said maintenance to be such as that provided hereinbefore."

After the death of the testator, Sallie M. McCreary went into possession of the estates devised to her in trust and received the rents and profits of the same. John A. Robinson brought this suit against Mrs. McCreary to recover the allowance provided for him by will of the testator, and claimed a recovery for his support in the past and for the future. Subsequently her children were made parties defendants. Among other matters alleged in defense, the defendants answered as follows:

"And for special answer in this behalf, these defendants expressly deny that they or either of them have ever refused to provide for the support and maintenance of the plaintiff as in his petition charged against them; on the contrary, these defendants have always been and are now ready and willing, as well out of their own means as out of the rents, issues, and profits of the lands devised to said Sallie McCreary by Austin Robinson, to support and maintain the plaintiff with the

comforts and necessaries of life; that to this end and for the accomplishment of this purpose, after obtaining possession of said devised land, these defendants requested, invited, and urged the plaintiff to make their home his home, and to live with them, and promised and agreed to furnish him, said plaintiff, with all the comforts and necessaries of life, to provide him with medicine and medical attention, and to nurse and care for him in sickness. But this the plaintiff refused to do. Again thereafter these defendants, the said Sallie McCreary being actuated as well by filial affection as by the directions of said will, proposed to said plaintiff that he select such boarding place in the town of Marlin (where plaintiff was then and is now residing) as might suit him best, and that these defendants would regularly and promptly pay his board and would furnish him with all the clothing he wanted and with medicine and medical attention, should he need any. This also the plaintiff refused to accept. And again thereafter, these defendants offered to plaintiff and proposed to build for him a suitable dwelling on one of the tracts of land devised by said Austin Robinson as aforesaid, and to supply and furnish him with all necessary and proper food and clothing, medicine and medical attention, if needed, to the full extent of their means and ability, even though this should require and consume more than his just and equitable share of said rents, issues, and profits. But this also said plaintiff refused to accept. Wherefore, these defendants again expressly deny and denounce as entirely untrue the charge that they or either of them have refused to support and maintain the plaintiff with the comforts and necessaries of life.

"These defendants say that by the terms of the said Robinson will, by the letter as well as the spirit of the same, the rents, issues, and profits accruing from said devised lands are vested in said Sallie Mc-Creary in trust for the beneficiaries therein named, and for each and all of them, and the said Sallie McCreary is required and directed to use the same for the support and maintenance of said beneficiaries and to see that the same are so applied; that the plaintiff herein is of intemperate habits, and for many years has been addicted to the excessive use of intoxicating liquors; that he is under the influence of evil and depraved associates, and is profligate in his habits; that money paid to him would not be used for his support and maintenance nor for medical attention or nursing, but would be at once spent in dissipation or bestowed upon said associates, and so the very object and purpose of said devise and trust would be defeated. All of which these defendants are ready to prove."

A demurrer to these answers was sustained and an exception reserved. During the course of the trial the defendants also offered to prove the value of the service of a superintendent to manage the property. Upon objection by the plaintiff, the testimony was excluded and the defendants again excepted.

The jury found that $50 per month was a reasonable sum for the

support of the plaintiff, and the court rendered judgment in his favor
for $1000 and decreed that the defendant Sallie McCreary should pay
him the sum of $50 per month at the end of every month so long as he
might live.   Upon appeal to the Court of Civil Appeals, the judgment
and decree were affirmed.

The effect of the rulings upon which the judgment was based was to
hold that the plaintiff was entitled, regardless of the facts pleaded
(to which a demurrer was sustained) and of the evidence excluded, to
have an allowance paid him in money for his support.   We are of
opinion that this was error.

Whether or not when an estate has been devised in trust and the
trustee is charged with the support of another from the trust estate,
the beneficiary is entitled to an allowance in money for that purpose
depends in every case upon the intention of the testator; and this
intention is to be discovered by a consideration of the value of the
estate charged, the previous relations between the testator and the
beneficiary, together with all the circumstances in relation to the estate
and parties existing at the time of the making of the will and at the
time of the death of the testator.   That such is the doctrine, we deduce
from the authorities, including those relied upon by counsel for defend-
ant in error.   We will first consider the latter.

In the case of Colton v. Colton, 127 United States, 300, two cases
were passed upon in one opinion.   A testator had devised his estate
to his widow with a request that she should provide a support for his
widowed mother and his unmarried sister.   Each of the latter filed a
bill in the Circuit Court of the United States to enforce a claim for
support.   A demurrer having been sustained to each of the bills, the
cases were brought to the Supreme Court of the United States to reverse
the rulings.   The main question discussed by the court in its opinion
was, whether the provision in the will upon which the complainants
relied was a mere request, or whether it enjoined a legal duty,—a ques-
tion that does not concern us in this case.   The court held that the
will created a trust in favor of the complainants and that it was in the
power of the trial court to hear evidence and to determine the mode
and measure of the support.   In conclusion, the court say:   "On the
whole, therefore, our conclusion is that each of the complainants in
these bills is entitled to take a beneficial interest under the will of
David D. Colton, to the extent, out of the estate given by him to his
wife, of a permanent provision for them during their respective lives,
suitable and sufficient for their care and protection, having regard to
their condition and necessities and the amount and value of the fund
from which it must come.   It will be the duty of the court to ascertain,
after proper inquiry, and thereupon to determine and declare what
provision will be suitable and best under the circumstances, and all
particulars and details for securing and paying it."   The prayers of the
respective bills were that the defendant should be compelled to make
the complainant a suitable provision from the bequeathed estate "in

such amount and in such manner" as shall seem meet. We do not understand the court to hold that the complainants were entitled to a direct pecuniary payment in money for their support; but since it was alleged that the devised estate was of the value of $1,000,000, that the defendant was living and had lived during the life of the testator in California, and, at the same time, the complainants lived in the State of New York and one was indigent and the other in straitened circumstances, there can be little doubt that if the question had been before the court it would have been held that they were entitled to such allowance.

Block v. Mauck, 52 Southwestern Reporter (Tenn.), 689, was very like the case last considered. In the latter, however, the devised estate was comparatively very small. The testatrix, a married woman, devised her estate to her husband and charged it with a support of her mother and sister. The sister resided at Bristol, in Tennessee, while the testator, at the time of her death, was living in a distant county in the same State. The defendant alleged that he had offered to support the complainant in his own home. The court held that she was not bound to accept this, but was entitled to a support payable in money.

A similar ruling was made by the same court in Fraser v. Hayes, 46 Southwestern Reporter, 475, but that was a case of a contract for support, which, as it seems to us, is governed by somewhat different principles.

In Loomis v. Loomis, 35 Barbour, 628, the plaintiff had, at the time of her marriage, entered into a contract with her husband by which he covenated and bound himself, his executors and administrators, to furnish her "a good and sufficient maintenance during her natural life." The husband died while they were living at the house of his brother, who became his executor, and she brought suit against the latter as executor upon the covenant. The defendant pleaded that he had offered to support her at his own home, where she and her husband were living at the time of his death; but the court held that she was not bound to accept such offer but was entitled to recover an allowance in money.

In Tolley v. Greene, 2 Sandford Chancery, 91, the testator had provided in his will for his widow, in lieu of dower, "a decent and comfortable support and maintenance out of his estate in sickness and in health, during her lifetime." Suit having been brought to enforce the provision, the court ruled that the measure of her recovery was a sum such as would enable her to keep house in an economical manner. In his opinion, the vice-chancellor says:

"From a careful examination of the testimony, I believe that there is sufficient material furnished on both sides to enable the court to fix the annual support with justice to the parties. It is evident that the contest as to the amount will turn principally on the question whether a suitable provision is to be made to enable the complainant to keep house in the village where she resides, or whether she is to be restricted

to living at board in the same village or in a country town. Upon this point, I can have no hesitation. She was the wife of W. Tolley for about thirteen years, living plainly, but in a good house, and with comfortable appendages. Her husband left only two children, who inherited some $35,000, subject to the support of his wife. If he had died intestate, she would have received absolutely a principal sum larger than that on which she now asks merely the interest for the rest of her life.

"It is not reasonable, under such circumstances, that this infirm old lady should be compelled to pass the remainder of her life in a boarding-house; restricted in room and in comforts, and indeed in what is necessary for her due support in sickness, by the stinted allowance. mentioned in the defendant's testimony. I do not believe that W. Tolley would have thus limited her, if he could have anticipated the existing state of things.

"Considering her station and mode of life, both before and after her marriage with W. Tolley, and the amount of his estate, I think she is entitled to be supported and maintained in housekeeping in a plain and economical manner, at the place of her residence."

So much for the cases cited in support of the judgment.

In deciding a similar case, the Supreme Court of Massachusetts, in Crocker v. Crocker, 11 Pickering, 252, say: "The leading object in the construction of all wills is to ascertain the intent of the testator, as discovered in the will itself; and for the purpose of thus ascertaining the intent, it is proper to consider, first, the terms of the particular bequest construed according to their natural and obvious meaning, and conformably to established rules of law; secondly, all other parts of the same will; and thirdly, the situation and circumstances of the testator, and the subject matter of the bequest." And again, in treating of the question how the support was to be furnished, the court say: "At the time this will was made, she was residing at a great distance from West Stockbridge, with her son, at a place which was then, and for a long time had been, her home and that of her family. There is nothing in the terms of the will, and we think nothing in the circumstances of the case, indicating an intent of the testator that the plaintiff, to avail herself of his bounty, was necessarily to leave her children and friends and go into the family of one of his executors. But by a handsome support, we think it was intended that she should be furnished with decent maintenance among her children and friends in the manner and style in which she had been accustomed to live." In Conkey v. Everett, 11 Gray, 95, the same court, in passing upon a like question, use this language: "The remaining inquiry, whether an adequate support is to be furnished her, independent of her own resources, or of the aid which she might contribute by the labor to which she had been accustomed, and which was suitable and proper for her under all the circumstances of her age, health, etc., must be decided in reference to the peculiar facts existing in the case. The estate owned

by the testator was a very small one, not exceeding in value $1000, and the testator and his wife were accustomed to labor. The widow, though somewhat advanced in age, was of competent health and strength to perform useful labor and thus aid in her own support. We think in estimating the sum to be paid for the support and maintenance of Mrs. Everett, the testator having in his will defined that to be 'all that may be necessary for her comfort,' we may properly answer the second question in the negative. The effect of this will be that some regard is to be paid to this circumstance, and she is not to be necessarily exempt from all labor, but, at the same time, the labor can only be such as is entirely suitable for a woman of her age, health, and condition in life, and such as was contemplated by the testator in the bequest made for her benefit."

In Willett v. Carroll, 13 Maryland, 459, the court quote with approval the following language from the opinion of the trial judge: "We are bound to look at the relative situation of the parties, according to the position which the complainant and respondents maintain in society. To enable us to do so, a proper regard must be had to the condition and habits in life of the said testatrix, and also the complainant. We must look to the extent of the estate, and to the mode of living of the parties, so far as expensiveness or economy is concerned, and the practice and habits of the persons with whom they associated."

While in no one of those cases is it held that the beneficiary was bound to accept other than a pecuniary allowance for support, we have quoted freely from the opinions for the reason that they forcibly illustrate the principles upon which the courts proceed in the determination of questions similar to that before us.

The principle is further illustrated by the case of Lynn v. Busby, 46 Texas, 600. There it was held that the beneficiary was entitled to a support only in the family of the trustee. It is true that the language of the will in that case was more specific than the language under construction in this. The use of the words, "shall take especial charge of," "support and maintain," tends to show that the beneficiary was to be cared for in the family of the trustee. But in construing the provision, the court lay stress upon the facts that the beneficiary "was deaf and dumb and had long lived with his brother, Milton Busby, the testator."

If in this case the plaintiff had been supported by the testator before his death in a house upon one of his farms, as the evidence shows, and if, as was pleaded, he was a man of intemperate habits, surrounded by bad associates and improvident in the use of money, then, in view of the character of the property and the uncertainty of the fund charged with his support and that of Mrs. McCreary and her children, we are of opinion that the testator did not intend that his brother should be paid in monthly installments a sum of money for his maintenance. The language of the opinion in the case last cited is peculiarly applica-

ble here. "It never entered into the thought of the testator, in making this will, to fasten upon the estate devised to his son a charge or incumbrance of a particular amount of money annually, or of limiting the support of his brother to a particular amount of money. Had such been the provision designed, it would have been in the nature of an annuity, to be paid to his brother, which might be disposed of by him for other purposes than a support, if not needed for that, or which would have to answer for a support, however much more might be needed, in case he was overtaken by sickness or permanent disease or other infirmity, which might swell his necessary support to more than that amount during one year."

We do not hold that the plaintiff was bound to accept a support in the family of his daughter. Nor do we think that it ought ever to be held that such is the support intended, unless the language of the will and the attendant circumstances (as in Lynn v. Busby) make such intention clearly appear. Such is human nature that the living in the family of another is calculated to breed dissension and to render the relation intolerable. The conflict between reciprocal rights and duties is likely to become more bitter than even the bread of dependence. But where it appears that a testator in his lifetime has supported another, and where he devised property charged with his maintenance, it is to be presumed, in the absence of language or circumstances showing a different purpose, that he intended that he should be supported in a like manner to that in which he had been previously maintained.

We think that the court erred in sustaining the demurrer to the answers.

We are also of opinion that in view of the number of beneficiaries who were entitled to support out of the profits of the devised estates, it was proper, in order to arrive at the net profits, to hear evidence as to value of the services of a superintendent of the business, and that therefore the court erred in excluding the testimony offered for that purpose.

We are urged to make a final disposition of the case, but this can not be done without a finding of all the facts.

In view of another trial, we suggest that it seems to us best that the case, if tried by a jury, should be submitted upon such special issues as will enable them to find by their verdict the specific facts and circumstances by which the court must be guided in construing the will.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*